UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
RETROPHIN, INC.,                        :    Case No.:
                                        :
                    Petitioner,         :    ECF Case
                                        :
        -against-                       :
                                        :
KEVIN MULLEADY,                         :
                                        :
                    Respondent.         :
                                        :
--------------------------------------- X

 

**MEMORANDUM OF LAW IN SUPPORT OF PETITION TO REQUIRE
KEVIN MULLEADY TO COMPLY WITH A SUMMONS ISSUED
PURSUANT TO SECTION 7 OF THE FEDERAL ARBITRATION ACT**

# PRELIMINARY STATEMENT

Pursuant to Section 7 of the Federal Arbitration Act ("FAA"), Retrophin, Inc. ("Retrophin") brings this petition to require Kevin Mulleady to comply with a summons (the "Summons") issued in an arbitration between Retrophin and its former Chief Executive Officer, Martin Shkreli (the "Shkreli Arbitration"). The Panel in the Shkreli Arbitration signed the Summons, and counsel for Mulleady accepted service, but Mulleady refuses to comply with it.

# BACKGROUND

**The Shkreli Arbitration and the Federal Suit**

Retrophin is a biopharmaceutical company that focuses on treatments for rare diseases. Retrophin is incorporated in Delaware. Its principal place of business is in California. Affirmation of Kevin Mead dated May 23, 2019 ("Mead Aff."), ¶ 4.

In August 2015, Retrophin filed a lawsuit against Shkreli in the Southern District of New York that accuses him of breach of fiduciary duty and being a "faithless servant." *Retrophin, Inc. v. Shkreli*, 15-cv-06451 (the "Federal Suit"). *See* Mead Aff., Ex. A, Complaint. Before founding Retrophin, Shkreli managed a group of hedge funds (the "MSMB Funds"). The complaint in the Federal Suit alleges, among other things, that Shkreli caused Retrophin to enter into seven settlement agreements that were in fact for the benefit of disgruntled investors in the MSMB Funds (and therefore for the benefit of Shkreli), rather than for the benefit of Retrophin, *id.* at ¶¶ 59-89; that Shkreli caused Retrophin to enter into four sham consulting agreements that were concealed settlement agreements with disgruntled investors in (and therefore for the benefit of Shkreli) and were not for the benefit of Retrophin, *id.* at ¶¶ 90-103, 108-127; and that Shkreli allocated Retrophin shares connected with a reverse merger to two of his associates in order to gain a personal benefit for himself, *id.* at ¶¶ 27-39. The complaint seeks damages of $65 million.

Two days after the complaint in the Federal Suit was filed, Shkreli commenced the Shkreli Arbitration. In the interest of having all disputes between the parties determined in a single proceeding, Retrophin filed its complaint as its counterclaims in the Shkreli Arbitration. The Federal Suit was stayed to permit Shkreli to challenge the arbitrability of the complaint before Retrophin dismissed it in favor of proceeding in the Shkreli Arbitration. Thereafter, the Shkreli Arbitration and the Federal Suit were stayed to permit the parties to discuss settlement. In December 2015, Shkreli was indicted in United States District Court for the Eastern District of New York. *United States v. Shkreli*, 15-cr-00637 (KAM). The stays of the Shkreli Arbitration and the Federal Suit continued through Shkreli's sentencing in the criminal case. In May 2018, the stay of the Shkreli Arbitration ended, and, on October 2, 2018, the Panel ruled that Retrophin's counterclaims were arbitrable. After the Panel's ruling, Retrophin filed a notice of voluntary dismissal of the Federal Suit. Mead Aff., ¶ 8. On October 22, the Panel scheduled the final merits hearings to begin on June 10, 2019 and end on June 25, 2019. The Panel scheduled a total of ten hearing days in June 2019.

**Kevin Mulleady**

Upon information and belief, Mulleady is an individual who resides at 330 East 38th Street in Manhattan. *Id*. at ¶ 20. He is a close business associate of Shkreli, having worked for the MSMB Funds and then Turing Pharmaceuticals AG (now known as Vyera Pharmaceuticals) ("Turing"), an entity founded by Shkreli after he left Retrophin. *Id*. at ¶ 10. Eventually, Mulleady became Turing's Chief Executive Officer. *Id*.

Mulleady played a key role in certain transactions at issue in Retrophin's counterclaims and defenses in the Shkreli Arbitration.

*First*, Mulleady had personal relationships with MSMB investors who were defrauded by Shkreli. Retrophin believes that Mulleady communicated with one or more MSMB investors

about their claims against Shkreli and the MSMB Funds and the resolution of them via settlement agreements or consulting agreements with Retrophin. *Id*. at ¶ 13.

*Second*, Mulleady received certain "free trading" shares in Retrophin as a result of Retrophin's reverse merger in 2012 in exchange for conveying 40,000 restricted Retrophin shares to Shkreli. Count 8 of the Indictment charges Shkreli with conspiracy to use and employ manipulative and deceptive devices and contrivances in violation of 15 U.S.C. §§ 78j(b) and 78ff relating to the purchase and sale of Retrophin securities. *Id*. at ¶ 14. At trial, the government contended Shkreli's arrangements to put these free trading shares into the hands of Mulleady and six other individuals was part of that conspiracy.[1] Indeed, the government contended that Mulleady was a co-conspirator. Mead Aff., Ex. F. Shkreli was convicted of Count 8. *United States v. Shkreli*, 15-cr-00637 (KAM) Dkt. 305. Mead Aff., Ex. A. at ¶ 15.

*Third*, after Mulleady left the MSMB Funds he threatened to sue Shkreli and others for unpaid compensation. Shkreli caused Retrophin's then outside counsel to draft a settlement agreement concerning compensation allegedly owed to Mulleady by the MSMB Funds as a Retrophin consulting agreement even though the parties did not contemplate that Mulleady – whose professional background was as an investment manager – would be providing *bona fide* consulting services to Retrophin. The consulting agreement called for Mulleady to receive $200,000 plus $1 million in Retrophin common stock. Ultimately, Retrophin's Board did not approve the agreement. *Id*. at ¶ 16 and Ex. A at ¶ 136, n.7. On information and belief, Shkreli entered into a settlement agreement with Mulleady in or around late 2014 or early 2015 in order to prevent Mulleady from contacting law enforcement about the sham consulting agreements.

---

[1] Retrophin's complaint refers to these shares as the "Fearnow Shares" and calls Mulleady and the other persons who received Fearnow Shares as "Fearnow Share Recipients."

*Fourth*, on information and belief, Shkreli and Mulleady worked together to form a limited liability company called Prospero Pharmaceuticals, LLC ("Prospero") in May 2015. On information and belief, Prospero attempted to create a generic version of one of Retrophin's pharmaceutical products, Thiola. Mead Aff., ¶ 17. This would be a violation of Shkreli's non-compete and good faith obligations, which would be relevant to Retrophin's defenses to Shkreli's affirmative claims in the Shkreli Arbitration.

**The Summons**

On April 4, 2019, the Panel in the Shkreli Arbitration issued a summons calling for Mulleady to appear before the Panel at 620 Eighth Avenue, New York, New York for a pre-merits hearing on April 23 "or on a date to be mutually agreed upon." The summons called for Mulleady to produce "[a]ny documents relating to Retrophin, the MSMB hedge funds, or any of the MSMB hedge fund investors, including but not limited to Darren Blanton, Alan Geller, Lee Yaffe, Steven Rosenfeld, Richard Kocher, Lindsay Rosenwald, Sarah Hassan, Spencer Spielberg, Schuyler Marshall, or David Geller, or Michael Lavelle." Mead Aff., Ex. C.

Retrophin's process servers went to Mulleady's apartment building to serve him with the summons nine times – on April 5, 6, 8, 10, 11, 16, 22 (twice), and 23. Mead Aff., Ex. G and Ex. H. On April 15, Kevin Mead, a Cooley attorney, called a cell phone number Cooley had identified as belonging to Mulleady. Mulleady answered, and Mead informed him that Retrophin was attempting to serve him with the Summons. Mulleady stated that he did not want to speak with Mead, and that his attorney would contact him. Mulleady refused to provide the name of his attorney. Mead Aff. ¶ 22. After the call, Retrophin emailed the Summons to two of Mulleady's email addresses, sent the Summons to Mulleady by certified mail, and left it with Mulleady's doorman. *Id*. at ¶¶ 21, 24-25.

Lance Gotko, Esq., Mulleady's attorney, contacted Mead a week later, on April 22. Gotko told Mead that he had a copy of the Summons, which meant that Retrophin's attempts at service had been effective. *Id*. at ¶ 26. However, Gotko would not acknowledge that Mulleady had been properly served or agree to accept service on his behalf. Mead told Gotko that Retrophin would move to compel unless Gotko accepted service on Mulleady's behalf. Gotko accepted service on April 23. Mead Aff., ¶ 27 and Ex. J.

On April 24, in an effort to begin a conversation about Mulleady's document production, Mead sent Gotko a list of proposed search terms to use in reviewing Mulleady's emails. Gotko did not reply to Mead's email. Mead Aff., ¶ 28.

On April 30, Gotko and Mead spoke again. Gotko said that Mulleady had run the proposed search terms, and they had generated an excessive number of hits. However, he was unable to say which terms had generated a disproportionate number of hits, or which email accounts Mulleady had searched. *Id*. at ¶ 29. In an effort to further narrow the document request, Mead told Gotko that the search could exclude Mulleady's Retrophin, MSMB, and Turing email accounts. *Id*. at ¶ 30. Mead asked that Mulleady run each of the proposed search terms individually, and let him know if any individual term still generated a disproportionate number of hits, as Retrophin was willing to discuss limiting its search terms. *Id*. Mead asked that these searches be done as soon as possible, given that the April 23 date in the summons had already past and the final hearing dates were in June. Gotko agreed to do so. *Id*.

Three days later, Gotko sent Mead an email in which he said that Mulleady objected to the Summons and would not comply with it:

> In light of the foregoing, Mulleady objects to the subpoena because complying with it would impose unfair and undue burdens and costs upon him, a non-party to this dispute; and, under the circumstances, because it appears the subpoena was improperly interposed to annoy and harass Mulleady.

Mead Aff., Ex. J.

On May 14, Retrophin asked the Panel to issue an order stating that the testimony and materials sought by the Summons are relevant to the Shkreli Arbitration. Mead Aff., ¶ 18. On May 23, that the Panel declined to consider whether or not the Summons sought relevant information, but said that Retrophin was free to pursue enforcement of the Summons in court.. *Id*. at ¶ 19.

## ARGUMENT

I. **THE COURT HAS POWER TO ENFORCE THE SUMMONS**

Section 7 of the FAA allows an arbitral panel to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. If a person refuses to comply with an arbitration summons, § 7 provides that, "upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." *Id*.

The Shkreli Arbitration involves interstate commerce; accordingly, the FAA applies. *See Zendon v. Grandison Mgmt., Inc.*, No. 18-CV-4545 (ARR)(JO), 2018 WL 6427636, at *1 n.1 (E.D.N.Y. Dec. 7, 2018) ("The FAA applies to all arbitration agreements that affect interstate commerce.") JAMS is administrating the Shkreli Arbitration out of its offices at 620 Eighth Avenue, and the Summons calls for Mulleady to appear at JAMS offices at 620 Eighth Avenue. Accordingly, this action is properly brought in this court.

This court has personal jurisdiction over Mulleady under 28 U.S.C. § 1332. Retrophin is a Delaware corporation with its principal place of business in California. Mulleady is a citizen of New York. Retrophin's complaint seeks $65 million in damages. *Washington Nat'l Ins. Co. v. Obex Grp. LLC*, No. 18 CV 9693 (VB), 2019 WL 266681, at *4 (S.D.N.Y. Jan. 18, 2019) (using the amount sought in the underlying arbitration to determine that the amount in controversy requirement had been met).

## II.     THE COURT SHOULD ENFORCE THE SUMMONS

This is a straightforward § 7 petition to compel compliance with an arbitral summons. The Summons is in writing and was issued by the Panel. It directs Mulleady to appear before the Panel to produce documents and give testimony. Mead Aff., Ex. C. Retrophin made repeated efforts to serve Mulleady with the Summons, and he ultimately received it. Thereafter, his counsel accepted service of the Summons. Mead Aff,. Ex. J. Thus, there is no issue as to service. Mulleady resides at 330 East 38th Street and the Summons calls for his testimony at 620 Eighth Avenue; those locations are well within 100 miles of each other. Fed. R. Civ. Pro. 45(c)(1)(A).[2]

Mulleady is named many times in Retrophin's complaint, and his evidence is plainly relevant for four reasons. Mead Aff., Ex. A, ¶¶ 22, 30, 34, 35, 37, 38, 39, 104 n.6, 136 n.7, 190.

*First*, Retrophin's counterclaims allege that Shkreli breached his fiduciary duty by causing Retrophin to enter into settlement and consulting agreements with MSMB investors that were not in fact for the benefit of Retrophin. *Id*. at ¶¶ 59-76; 90-95. Mulleady was a key point

---

[2] The Summons complies with Second Circuit case law because it calls for Mulleady to appear and testify on a hearing date at which the arbitration panel will be present. *See Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008). As is customary, Mead and Gotko discussed the possibility that, depending on the document production made by Mulleady, Retrophin might be able to forgo live testimony from Mulleady.

of contact with individuals who received these settlement and consulting agreements, including, among others, Michael Lavelle, Richard Kocher, and Alan Geller. Mead Aff., Ex. E. Lavelle and Kocher received settlement agreements from Retrophin, and Geller received a sham consulting from Retrophin. Mead Aff. Ex. A, ¶¶ 59-76; 90-95. Retrophin believes that Mulleady communicated with one or more of the defrauded investors about these agreements, and was aware that they were not entered into for the benefit of Retrophin.

*Second*, Retrophin's counterclaims also allege that when Retrophin gained control over the "Fearnow Shares," Shkreli arranged for Mulleady to receive 400,000 of those shares, and in exchange Mulleady transferred 200,000 of his Retrophin shares to Shkreli personally. *Id*. at ¶¶ 27-39. Shkreli and Mulleady memorialized this deal in an email. Mead Aff., Ex. E. At trial, the government contended Shkreli's arrangements to put these free trading shares into the hands of Mulleady and six other individuals was part of that conspiracy, and the government contended that Mulleady was a co-conspirator. Mead Aff., Ex. F. Shkreli was convicted of Count 8. *United States v. Shkreli*, 15-cr-00637 (KAM) Dkt. 305.

*Third*, Retrophin's counterclaims allege that Shkreli caused a settlement agreement concerning compensation allegedly owed to Kevin Mulleady to be drafted as a consulting agreement, even though the parties did not contemplate that Mulleady would be providing *bona fide* consulting services. Mead Aff., Ex. A, ¶ 136 n.7. Mulleady's willingness to enter into a sham consulting agreement further supports the idea that Mulleady was aware that certain MSMB investors had entered into sham consulting agreements. Further, on information and belief, Retrophin believes that Shkreli entered into a settlement agreement with Mulleady in or around late 2014 or early 2015 in order to prevent Mulleady from contacting law enforcement about the sham consulting agreements.

*Fourth*, on information and belief, Shkreli and Mulleady worked together to form a limited liability company called Prospero Pharmaceuticals, LLC ("Prospero") in May 2015. On information and belief, Prospero attempted to create a generic version of one of Retrophin's pharmaceutical products, Thiola. This would be a violation of Shkreli's non-compete and good faith obligations, which would be relevant to Retrophin's defenses to Shkreli's affirmative claims in the Shkreli Arbitration.

Nor can there be any doubt that Mulleady has relevant documents. His attorney claimed that Retrophin's email search terms yielded 33,000 hits.

To the extent that Mulleady has legitimate claims of burdensomeness, they can and should be addressed by the Panel. *Washington Nat'l Ins. Co. v. Obex Grp. LLC*, No. 18 CV 9693 (VB), 2019 WL 266681, at *7 (S.D.N.Y. Jan. 18, 2019) (leaving the Panel to address arguments that "the summonses are duplicative, overbroad, burdensome, and seek privileged information")

Retrophin therefore requests that Mulleady be directed to appear before the Panel to testify and produce documents at a date to be determined by the Panel.

## **CONCLUSION**

For the above reasons, Retrophin respectfully requests that the court issue an order compelling Mulleady to appear to testify and produce documents responsive to the Summons on a date to be determined by the Panel.

Dated: New York, New York
      May 23, 2019

                                                       COOLEY LLP

                                                       By: /s/ Celia Goldwag Barenholtz
                                                       Celia Goldwag Barenholtz
                                                       Ian Shapiro
                                                       Kevin Mead
                                                       Amanda Liverzani
                                                       COOLEY LLP
                                                       55 Hudson Yards

New York, New York 10001
Tel. (212) 479-6000
Fax. (212) 479-6275

*Attorneys for Retrophin, Inc.*